Estate of Charles Hart, Deceased, Florence Hart Wainwright, Administratrix, d.b.n.c.t.a., and Estate of Florence McCurdy Hart, Deceased, Natalie Hart, Eileen Hart McMichael and Florence Hart Wainwright, Administratrices v. Commissioner.
Estate of Hart v. Commissioner
Docket No. 47374.
United States Tax Court
T.C. Memo 1955-295; 1955 Tax Ct. Memo LEXIS 40; 14 T.C.M. (CCH) 1140; T.C.M. (RIA) 55295; October 31, 1955
*40 James A. Moore, Esq., and R. C. Sorlien, Esq., for the petitioners. William G. Handfield, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax in the amount of $350.72 for the year 1949. The sole question is whether the taxpayers are entitled to a capital loss carry-over deduction claimed in 1949 for a loss upon stock of the Delaware River Steel Company. Findings of Fact Charles Hart and Florence McCurdy Hart, husband and wife, filed a joint income tax return for the year 1949 with the collector of internal revenue for the first district of Pennsylvania. During that year they were residents of Media, Pennsylvania. Charles Hart died on May 22, 1950, and Florence McCurdy Hart died on November 18, 1954. Florence Hart Wainwright is Administratrix d.b.n.c.t.a. of the Estate of Charles Hart. Natalie Hart, Eileen Hart McMichael and Florence Hart Wainwright are Administratrices of the Estate of Florence McCurdy Hart. On January 1, 1948, Florence McCurdy Hart owned 715 shares of the capital stock of Delaware River Steel Company, a Pennsylvania corporation. She purchased 675 shares on or before *41 January 10, 1911, for $100 a share. She purchased an additional 20 shares on or before January 28, 1920, for $100 a share. The Delaware River Steel Company (here inafter referred to as the Company) carried on the business of manufacturing pig iron from its incorporation in 1909 until 1939. The financial condition of the Company is shown by the following trial balance of its books and accounts as of May 31, 1939: Debits
Accounts Receivable
$ 12,689.51
Accounts Receivable T. Hemphill - Trustee
464.60
Loan Howard F. Hansell, Syndicate Mgr.
2,927.68
Prepaid Insurance
578.50
Deferred Charges (Services of Trustee)
83.34
Deferred Charges (Expenses of Bond Issue)
3,864.53
Inventory Materials
Coke
$ 469.40
Limestone
400.03
Captain Ore
5,124.33
Ferromanganese Slag
550.03
Mill Scale
729.48
Old Bed Ore
17,242.29
Open Hearth Slag
318.82
Pebbles
405.98
Wabana Ore
5,830.97
Stores
24,615.58
55,686.91
Notes Receivable
2,001.41
Garage Building
200.00
Office Furniture & Fixtures
113.50
Package Account (Prepaid for Containers)
72.35
Plant and Real Estate
$1,205,084.60
Less Reserve for Depreciation
167,837.58
1,037,247.02
Expenses (P. & L. Items)
Expense while idle Office
$ 518.43
Expense while idle Overhead
3,673.03
Expense while idle Plant
254.83
Expenses of Trustee
6,837.85
Dock & Wharf Expense
149.59
11,433.73
Reserve for Relining Furnace (P. & L.)
17,932.48
Profit Loss - (Deficit)
646,123.46
$1,791,419.02
Credits
Accounts Payable
$ 43,860.13
Bonds - 5 year 6% Ser. A
397,000.00
Bonds - 5 year 6% Ser. B
600,000.00
Accrued Interest on Bonds Ser. "A"
119,100.00
Accrued Interest on Bonds Ser. "B"
136,800.00
Taxes Accrued (Current Year)
3,402.40
Accrued Soc. Sec. Taxes
1.08
Interest Rec'd (P. & L. Item)
55.41
Capital Stock - Common 4,912 shares - $100 par
491,200.00
$1,791,419.02
*42 On or about January 28, 1939, an application for relief under Section 77B of the Bankruptcy Act was filed for the Company with the United States District Court for the Eastern District of Pennsylvania, and a Trustee was appointed. The Trustee subsequently advised the court that reorganization was impossible, and the application was dismissed. The Chester-Cambridge Bank and Trust Company, Chester, Pennsylvania, Delaware County National Bank, Chester, Pennsylvania, and Union National Bank of Youngstown, Ohio, were the holders of mortgage bonds totaling $997,000 shown in the trial balance of May 31, 1939. Chester-Cambridge Bank and Trust Company was Trustee-Mortgagee for the bondholders. It held bonds of the Company as collateral for the personal note of Charles Hart, which bonds were secured by a first mortgage on the plant of the Company. It also held 1,372 shares of stock of the Company out of 4,912 shares outstanding as further collateral security for Charles Hart's note. On June 19, 1939, suit was instituted by writ of scire facias sur mortgage by the Trustee-Mortgagee to foreclose the mortgage. Judgment was entered by default for the Trustee-Mortgagee on July 17, 1939, for *43 the amount of $1,378,830.24. Thereafter execution was issued and the premises covered by the mortgage were sold by the Sheriff of Delaware County on the 4th Monday of August, 1939, to the Trustee-Mortgagee for $2,500 by Sheriff's Deed dated September 9, 1939. No deficiency judgment was obtained against the Company at that time or subsequently nor did the trustee for bondholders of the Company ever file a petition with the court to fix the fair market value of the property acquired under the foreclosure sale. After the foreclosure, the Company remained in possession of and held unencumbered legal title to other real and personal property. Its balance sheet as of December 31, 1939, showed the following: Assets
Cash - Chester-Cambridge Bank & Trust Co.
$ 973.82
Accounts Receivable
12,672.13
Joseph P. Santman
$ 48.52
Caroline Foundry Co.
39.33
Charles Hart
3,581.97
R. H. McCurdy
8,802.31
Riverside Steel Casting Co.
200.00
Building - Garage
200.00
Raw Materials
31,071.33
Coke
469.40
Limestone
400.03
Captain Ore
5,124.33
Managanese Slag
550.03
Mill Scale
729.48
Old Bed Ore
17,242.29
Open Hearth Slag
318.82
Pebbles
405.98
Wabana Ore
5,830.97
Stores (supplies, spare parts & c)
24,615.58
Office Furniture & Fixtures
113.50
$ 69,646.36
Liabilities
Accounts Payable: Hannum, Hunter & Hannum
$ 1,900.00
Capital Stock - 4,912 shares - $100.00 par
491,200.00
Profit & Loss (Deficit)
- 423,453.64
$ 69,646.36
*44 The board of directors of the Chester-Cambridge Bank and Trust Company were fully aware of the existence of a substantial pile of pig iron and some cash in the hands of the Company after the foreclosure. They considered the possibility of suing on the bonds and obtaining a deficiency judgment and determined affirmatively not to do so. This decision was communicated to the officials of the Company, one of whom was Charles Hart. The decision was based on the board's opinion that the Bank would receive less on a forced sale of the Company's remaining assets than it would if it allowed Charles Hart and the Company's officers to operate the Company. Although the Company lost its plant by the 1939 foreclosure, it continued in existence until 1948 for the purpose of liquidating its inventory. During 1940 it received $48.52 and expended $822.14. From January 1, 1941, until June 28, 1948, the Company had the following receipts and expenses: 1940 Dec. 31 BALANCE. AS PER BOOKS
$ 200.20
RECEIPTS 1/1/41 to 5/27/48
Caroline Foundry Co. - for pig iron
$ 39.33
Reimbursement by Bank - for watchmen
54.25
Sale of scrap rails
223.72
Sale of iron ore
32,166.50
Sale of store room supplies
13,226.25
Sale of furniture & fixtures
110.00
Sale of real estate
1,304.70
47,124.75
$47,324.95
DISBURSEMENTS 1/1/41 to 5/27/48
Office expense (tel., water, stationery, heat,
etc.)
$ 246.58
Watchman (Reimbursed by Bank)
36.75
Repairs office building
13.50
Commonwealth of Pa., state capital stock tax
743.78
Legal expense
100.00
1,140.61
1948 May 27 BALANCE AS PER BANK STATEMENT
$46,184.34
UNPAID BILLS 5/27/48
THE ROBERT McCURDY CO.
Bills paid for Co. Pa. Bonus Tax $ 21.53
Electricity 38.68
Telephone bills 187.57
Water bills 41.53
Moving - Rep. heater, etc. 324.37
Stenographers' salaries 3,729.37
Post office box rent 7.93
4,350.98
CHADWICK, CURRAN, PETRIKIN AND SMITHERS
Expenses incurred $ 237.08
Louis N. Howard - services re sale
of bed of lateral rwy. 50.00
Professional Services 1,700.00
1,987.08
COMMONWEALTH OF PENNSYLVANIA
Taxes to 6/30/48
23.20
Articles of Dissolution - filing fee
10.00
Affidavits of Articles of Dissolution
.75
6,372.01
Balance available for distribution to stockholders
$39,812.33
Number of shares outstanding 4,912
Amount payable per share $8,1051
*45 On December 2, 1946, as a result of a resolution by the board of directors, the Company filed an election to dissolve. In the course of dissolution, a liquidating payment was made to the common stockholders of record June 6, 1948, in the amount of $8.1051 per share. On June 29, 1948, a Certificate of Dissolution of the Company was issued by the Department of State of the Commonwealth of Pennsylvania. In 1948 Florence McCurdy Hart received $5,795.15 in full payment for her 715 shares of common stock of the Company. Petitioners realized no capital gain from any transaction in the calendar year 1948. The stock of the Company did not become worthless prior to the year 1948. Opinion RAUM, Judge: The parties agree that on June 6, 1948, Florence McCurdy Hart (hereinafter referred to as the "taxpayer") owned 715 shares of stock of the Delaware River Steel Company; that 695 of these shares had a cost basis of $100 per share; and that on that date, upon the complete liquidation of the Company, she received a distribution of $5,795.15 in full payment for her 715 shares. The respondent contends that the stock of the Company became worthless prior to 1948 and that the taxpayer *46 did not sustain a capital loss in that year. The petitioners contend that the distribution in liquidation gave rise to a capital loss in 1948, and that the taxpayer was entitled to the deduction of the capital loss carry-over claimed in joint return filed by her and her husband for 1949. The respondent urges that the stock of the Company had no value subsequent to 1939. He points to the fact that the Company was in financial difficulties early in that year, that its liabilities exceeded its assets and that it had mortgage bonds outstanding in the amount of $997,000; that action was instituted by the trustees for the bondholders to foreclose the mortgage on June 19, 1939; that judgment was entered against the Company on July 17, 1939, for the amount of $1,378,830.34; that execution was issued on the judgment and the mortgaged premises, consisting of the Company's plant and real estate, was sold by the Sheriff of Delaware County to the Mortgagee-Trustee for $2,500; that after this sale the officers of the Company proceeded to wind up its affairs and sell its remaining assets; and that these facts clearly indicate that in 1939 the Company was a defunct, insolvent corporation, and that *47 its stock had absolutely no value. We do not agree with the respondent. After the Sheriff's Sale in 1939 the Company owned assets which were not included in the mortgaged premises at the time of foreclosure. These assets consisted of an inventory of pig iron, and other supplies and equipment. The trustee for the bondholders, which was also a stockholder of the Company, decided not to sue on the bonds and obtain a deficiency judgment because it felt it would receive less on a forced sale of the assets than it would as a stockholder if it allowed Charles Hart and the other officers of the Company to dispose of them. As a result of this decision, which was communicated to the officers of the Company, it was left with unencumbered assets which were sold during the years 1940 to 1948 for approximately $47,000. After subtracting expenses incurred in those years, the Company netted $39,812.33. This amount was distributed proportionately to its stockholders, including the taxpayer, during the year 1948 when the Company was liquidated and dissolved. This, we think, is * convincing evidence that the stock of the Company did not become worthless prior thereto. Although the matter may not be *48 completely free from doubt, we have concluded, on the basis of the entire record, that the stock did not become worthless prior to 1948 and that a capital loss was sustained in that year by the taxpayer when the distribution she received amounted to less than the cost basis of her stock. The respondent erred in disallowing the capital loss carry-over deduction claimed by her in the joint return filed for 1949. Decision will be entered for the petitioners. Footnotes
*. The word "strong" was deleted from this sentence by Official Tax Court Order dated November 3, 1955, and signed by Judge Raum.↩